MARK R. MACDONNELL *vs.* ARTHUR H. LEONARD.

JUNE 22, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

172

Moss, J. This is an action in assumpsit to recover for services rendered and expenses incurred by the plaintiff, through an agent, in preparations for the burial of the body of John Henry Leonard, the deceased father of the defendant, it being alleged by the plaintiff that the defendant authorized these services and expenses and agreed to pay for them.

On appeal from a decision of a district court the case was tried in the superior court before a jury, which returned a verdict for the plaintiff for $676.82, being the amount of the original bill of $607.70, and interest thereon. The defendant's motion for a new trial was denied and the case is now before us on his bill of exceptions, in which the principal one is to the denial of his motion for a new trial.

Uncontradicted evidence for the plaintiff proved the following facts: On August 25, 1938, the plaintiff, a funeral director and embalmer, with a place of business in New York city, was absent on a visit in Florida. He had arranged with Francis X. Maher, another funeral director and embalmer of that city, to take care of the plaintiff's business in his absence. Maher, on the day mentioned, received a request from the plaintiff's office in New York to take care of the arrangements for the funeral of the defendant's father, who had just died at a hotel in that city.

He conferred on that day with the deceased man's widow, who told him that no arrangements could be settled until the defendant, who was her stepson, arrived from Providence, in this state. The evening of the same day the defendant and Maher met and settled arrangements for the preparation of the body and its shipment to Providence; and they went to the National Casket Company and selected a casket. Maher testified also as follows as to what the defendant said at that conference: "He told me that his father

told him that he was leaving him quite a sum of money as insurance; he was a beneficiary of that insurance and he said, 'Now, I want this understood,' he said, 'you are under no circumstances to bother your stepmother on my death, because you are to pay all bills,' and he emphasized the fact that he was not to bother the stepmother."

Maher testified also, and the defendant admitted at the trial, that Maher, at that conference, told the defendant what the charges were for the funeral arrangements and also drew up a promissory note, which the defendant signed. This note was filed as an exhibit. It is dated August 25, 1938, and bears the signature of the defendant, followed by his home and business addresses. The body of it reads as follows:

> "On Sept. 25, 1938 the Undersigned agrees to Pay Mark R. MacDonnell Funeral Director of 211 W. 56th the sum of $607.70 for the funeral of his father John Henry Leonard."

Maher testified further that at the same conference the defendant wrote, on the back of one part of a sheet of letter paper of the hotel where they were, the names and addresses of three persons as business references, two of New York city and one of Detroit; and that the witness wrote on the back of another part of the same sheet of paper the charges making up the sum of $607.70. the principal items being as follows: "Casket 483.00. Pine Box 25.00; Services 80.00; and Express Providence 11.20." A sheet of letter paper, corresponding to this testimony and identified by the witness as the one referred to, was filed as an exhibit.

The defendant, in his testimony, did not deny the testimony of Maher, as above set forth, but said that he signed this note, which he referred to as "that letter", on behalf of his father's estate, which he said had a claim of fourteen or fifteen hundred dollars "against the government." Maher in his testimony denied that there was any understanding that the father's estate was to pay the funeral charges or that any mention was made to him, at the time when the note was signed, of any claim against the government.

The plaintiff testified that he received from the defendant a letter dated September 13, 1938. There was no denial by the defendant that he wrote this letter, which was introduced in evidence. It was addressed to the plaintiff and was as follows:

"I wish to thank you for the way in which you conducted the business in connection with the death of my father who passed away August 25th at the Park Central Hotel.

"The time has now come when you are no doubt looking for reimbursement. There is an ample amount of money in my father's estate to take care of everything and at this time I request that you send a bill for your services to the Estate of John H. Leonard, Probate Court, Norwich, Conn. and I will see that it is taken care of as soon as possible."

The plaintiff testified that in accordance with this request he filed a claim against the father's estate and notified the defendant by letter that he had done so; but that it had turned out that the assets of the estate were only about $300 and no part of the claim was ever paid. The language of the plaintiff's letter to the defendant indicates clearly that in filing the claim in the probate court, he was not relinquishing his claim against the defendant.

Near the end of the defendant's testimony he stated again that he signed the paper in New York in behalf of the estate and added that he was supposed to have been made administrator of his father's estate, but that his stepmother was appointed instead. He admitted that he had collected about $4200 on life insurance policies made payable to him on his father's death and added, "but my·stepmother collected twice as much." At the very end of his testimony, when asked by his attorney what he understood the paper which he signed in New York to be, he replied: "An estimate of the expenses of my father's funeral, which was to be entered in probate."

The defendant's motion for a new trial was based solely on the grounds that the verdict was contrary to the evidence and the weight thereof; that it was contrary to the

law; and that it did not do substantial justice between the parties. In denying this motion the trial justice said that there was a conflict of testimony and the jury chose to believe the testimony of the plaintiff and that the jury was justified in returning the verdict for the plaintiff in the sum of $676.82, being, as above stated, the original claim for $607.70 and interest thereon.

We have considered the evidence in the case and cannot say that the trial justice was clearly wrong in denying the defendant's motion.

Only one other exception was relied on by the defendant in his brief and in the argument before us. This was to the admission, against his objection, of the above-quoted testimony by Maher as to what the defendant told him, at the time when the written promise by the defendant in the form of a promissory note was signed, about a conversation between the defendant and his father a few days before the father's death. In our opinion that testimony was relevant and material to the main issue in the case and the exception to its admission was without merit.

The defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Max Winograd, William J. Carlos,* for plaintiff.
*Thomas H. Gardiner,* for defendant.